ENTERED
BOONE CIRCUIT/DISTRICT COURT
MAR 8 - 2006
BY PAT GUTZEIT CLERK
DC

**COMMONWEALTH OF KENTUCKY**
**BOONE COUNTY CIRCUIT COURT**
**54th JUDICIAL DISTRICT**
**CASE NO. 05-CI-00436**

MILDRED ABBOTT, et al )
    Plaintiffs )
 )
-vs- ) **ORDER**
 )
STANLEY M. CHESLEY, et al )
    Defendants )

**CASE NO. 05-CI-00356**

KENTUCKY FUND FOR HEALTHY )
LIVING, INC. )
 )
    Plaintiff )
 )
-vs- )
 )
MILDRED ABBOTT, et al )
 )
    Defendants

This matter is before the Court on motions for Partial Summary Judgment filed on behalf of the Plaintiffs. Following a briefing schedule, said Motions came on before Court for a hearing on February 10, 2006. Pursuant to the Court's direction that date, due to need for ongoing discovery and other motions related to Defendant Chesley, argument was heard only as to Individual Defendants Cunningham, Gallion, and Mills as well as The Kentucky Fund for Healthy Living, Inc. The Plaintiffs were represented by Hon. Angela M. Ford; Defendants' Cunningham/Gallion/Mills were represented by Hon. William E. Johnson; Defendant Chesley was represented by Hon. Frank V. Benton, IV, and Defendant The Kentucky Fund for Healthy Living, Inc. was represented by Hon.

PLAINTIFF'S EXHIBIT C (Blumberg No. 5113)

Robert E. Sanders.

As to The Kentucky Fund for Healthy Living, Inc., Plaintiffs' Motion was for a partial summary judgment on Count Three (Declaratory Judgment) and Count Six (Constructive Trust), as well as for a dismissal of the Fund's Petition for a Declaration of Rights which the Court has treated as a Counter-Claim. In actuality, the claims by the Plaintiffs against this Defendant are totally dependent upon the outcome of the claims of the individual Defendants Cunningham, Gallion, and Mills. Since the uncontested documents of record demonstrate a breach of their fiduciary duty as to those Plaintiffs represented by them, the relief by way of summary judgment against said three individual Defendants will require that similar relief be granted on behalf of the Plaintiffs against The Kentucky Fund for Healthy Living, Inc.

As to Defendants Cunningham/Gallion/Mills, Plaintiffs seek summary judgment on Count One of their Complaint (Breach of Fiduciary Duty), Count Three (Declaratory Judgment), Count Five (Disgorgement), and Count Six (Constructive Trust). When all the smoke dies down herein, one need go no further than an analysis of two exhibits to conclude that these three Defendants did breach their fiduciary duty to any of the Plaintiffs represented by them in the underlying case of *Jonetta M. Moore, et al v. A. H. Robins Company, Inc, et al*, Boone Circuit Court, Case Number 98-CI-00795. The two exhibits referred to are found as attachments one (1) and two (2) to Ms. Ford's Reply to the Response of Defendants Mills, Gallion and Cunningham to Plaintiffs' Motion for Partial Summary Judgment filed on or about January 26, 2006. Exhibit "1" is a copy of the Fee Contracts for these three Defendants and Exhibit "2" is a schedule of deposits and disbursements.

Defendant Gallion had fee contracts with his client calling for an attorney fee of thirty-three (33%) percent and an agreement to make no settlement without the consent of the claimant. Defendant Cunningham had a fee contract for thirty-three and one-third (33 1/3%) percent and

likewise agreed to make no settlement without the consent of his clients. Defendant Mills had an agreement with his clients that attorney's fees shall be set by the Court, but shall not be more than thirty (30%) percent of client's net recovery. Although these three defendants argue that they operated as a consortium in the handling of matters in this case, they still are bound by the individual fee contracts of the others. Defendant Chesley was to receive a percentage of the fees obtained by these three Defendants, not a percentage in addition thereto. Instead, according to their own exhibit, which they identified as Attachment "6", they admitted paying themselves over Twenty Million Dollars ($20,000,000.00) each, the same as to Defendant Chesley, millions to other lawyers and close to Three Million Dollars ($3,000,000.00) to non-lawyers for a subtotal of over One Hundred and Six Million Dollars ($106,000,000.00) Dollars out of Two Hundred Million Dollars ($200,000,000.00) in a category called "Subtotal for Attorney Fees and Other Costs". Their justification for all of this is a blanket Court Order (entered by a now reprimanded presiding judge) approving their expenditures which does not afford them the protection they desire, for it does not identify either a percentage or a dollar amount which they were allowed to charge. Furthermore, since contingency fees cannot be shared with non-lawyers, there is no explanation as how such large sums of money were arrived at in expenditures to such individuals. This same document shows that these three defendants accepted directors' fees of Eighty-Five Thousand Six Hundred Dollars ($85,600.00) each with another One Hundred and Twenty Thousand Dollars ($120,000.00) disbursed to a non-defendant director of The Kentucky Fund for Healthy Living, Inc.

As argued by Plaintiffs' counsel, simple arithmetic shows that the above subtotal for attorney fees and other costs yields a figure far in excess of any contracted for contingent attorneys' fees in this case. The only plausible argument made by these three Defendants as to why this simple mathematical approach might be off somewhat has to do with the side letter agreement of May 29,

2001 as part of this Two Hundred Million Dollar ($200,000,000.00) settlement. Under that side letter agreement, Seven Million, Five Hundred Thousand Dollars ($7,500,000.00) was set aside according to the documents produced in discovery, that money sat for a year with no claims being made and during a hearing on June 27, 2002, the Court did authorize the attorneys to just keep it. Earlier that month, the Court noted an absence of any objection by any individual claimant as to how much attorney fees were being taken by these individuals. But, it is now clear that no notice of fees being requested or taken in excess of the fee contracts were ever disclosed to any of their clients. Likewise, it was represented to the Court during the June 27, 2002, hearing regarding that Seven Million Five Hundred Thousand Dollars ($7,500,000.00) that all clients had or would agree to the balance of funds going to charity. It is now clear from the paper discovery produced that same was not true, and none of the clients were advised of the magnitude of the funds being transferred.

These three Defendants argue that all of these issues could have and should have been raised in the underlying tort action, but clearly that was impossible since all of the above was never disclosed to their clients. They argue that at first this was a class action with different guidelines to be followed, but they were all part of the mediation settlement agreement where this case reverted back to individual claims after the class action was decertified. Likewise, an argument has been made that special rules might apply to mass tort litigation which might be applicable herein, but again these three Defendants are bound by the fee contracts they themselves executed. To get the vague Order of Approval from the Court that did not spell out percentages or amounts, they represented that all proceeds were handled in accordance with the intention of the parties. In reality they were passing out money to themselves and others like it was their's to do with as they wished.

Via paper discovery and documents found under seal or in the judge's office in Boone County, it is now clear that it was not true that none of the Plaintiffs' objected to the amounts

they were receiving. There was no disclosure of any settlement details to the clients. There was no agreement by the Plaintiffs to fund a charitable corporation in the amount of Twenty Million Dollars ($20,000,000.00) and have these attorney defendants continue to make money from that fund. It is not true that excess dollars were used to pay numerous claims of various constituencies as represented by them.

As to The Kentucky Fund for Heathy Living, Inc., that corporation was created in January of 2003, and until September of 2004, there were no grants. However, the directors were paying themselves over Twenty-Three Thousand Dollars ($23,000.00) per month in either fees or expenses. At least twice during their meetings in 2003, they were reminded how essential it was to keep financial information in the corporation private, and that it should be deemed "highly sensitive and confidential". Since the funds used to create this corporation came from funds as a direct result of the Defendants breach of their fiduciary duty, the relief of a declaratory judgment and constructive trust is applicable both to these defendants and the Fund they created. Other than CPA expenses necessary to seek an extension of time for their approving grants and filing other reports in the event of an appeal hearing, no further expenditures of any type shall be made. One need look no further than the Fund's May 2003 minutes where the Directors agreed to treat themselves to a trip for a meeting and retreat in Pebble Beach, CA, to see why the Court's earlier Order entered in this record was appropriate.

In conclusion, the uncontroverted facts show that in rounded figures the Plaintiffs received Seventy Four Million Dollars ($74,000,000) from this litigation, lawyers and others received One Hundred Six Million Dollars ($106,000,000) with some of that going to expenses, and the other Twenty Million Dollars ($20,000,000) deposited into a "charitable fund". A Court Order based on false representations does not afford the Fund any protection. A review of the financial data for the

first two years showing that the Directors paid themselves more than they ever paid out in grants (January 2003 through January 2005) negates any argument that the Fund should be allowed to continue unless, as is argued by Plaintiffs counsel, the Fund wants to do so without any dollars derived from the underlying Fen-Phen litigation.

Summary judgment is governed by *C.R. 56.03* which states that judgment shall be entered for the moving party if the "... pleadings, depositions, ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* In *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky, 1991), the Kentucky Supreme Court specifically rejected the federal standard for summary judgment and adopted instead the standard set forth in *Paintsville Hospital Company v. Rose*, 683 S.W.2d 255, 256 (Ky, 1985):

> "We adhere to the principle that summary judgment is to be cautiously applied and should not be used as a substitute for trial. As declared in Paintsville Hospital, it should only be used 'to terminate litigation when, as a matter law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.' It is vital that we not sever litigants from their right of trial, if they do in fact have valid issues to try, just for the sake of efficiency and expediency."

*Steelvest v. Scansteel*, 807 S.W.2d 483.

"The Kentucky Supreme Court has held that the word 'impossible' as set forth in the standard for summary judgment is meant to be 'used in a practical sense, not in an absolute sense'." *Lewis v. B&R Corporation*, 56 S.W.3d 432, 436 (Ky. App. 2001), citing *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992); *Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724 (Ky. 1999). The trial court must view the evidence in the light most favorable to the non-moving party, and summary judgment should be granted only if it appears impossible that the moving party will be able to produce evidence at trial warranting a judgment in his favor. The trial court should not decide any

issues of fact but should look at the evidence in the record to discover if a real issue exists. *Id.* As discussed herein, it does not, as to these three defendants, nor through them, The Kentucky Fund for Healthy Living, Inc.

Accordingly, Plaintiffs' Motion for Partial Summary Judgment as to Count One (Breach of Fiduciary Duty) against Defendants Cunningham/Gallion/Mills is sustained. By operation of law, that holding necessitates sustaining as well Plaintiffs' Motion for Declaratory Judgment and Constructive Trust as to both these three Defendants and The Kentucky Fund for Healthy Living, Inc. The Court is of the opinion that the Motion for Partial Summary Judgment under Count Five (Disgorgement) is not a matter for summary judgment disposition. The handling of that Count, and all remaining matters, shall be the subject of a Status Conference to be held in the Boone Circuit Court on April 12, 2006, at 10:00 a.m.

DATED this ___8___ day of March, 2006.

_____
JUDGE WILLIAM WEHR
Special Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Order was mailed by regular U.S. Mail, postage prepaid, on this the _____ day of March, 2006, to the Hon. Angela M. Ford, Attorney for Plaintiffs, Hon. William E. Johnson/Hon. Frank B. Benton, IV, Counsel for Individual Defendants, Hon. Robert E. Sanders, Counsel for The Kentucky Fund for Health Living, Inc., and Hon. William J. Wehr, Special Judge.

CERTIFICATE
I, PAT GUTZEIT, clerk of the Boone District/Circuit Court, hereby certify that I have mailed a copy of the foregoing order and notice to all parties hereto at their last known addresses or to their counsel of record this ___ day of _____.
PAT GUTZEIT
BOONE DISTRICT/CIRCUIT COURT
_____ D.C.