UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

CONTINENTAL CASUALTY COMPANY,  )
                               )
        Plaintiff,             )   Civil Action No. 5:06-272-JMH
                               )
v.                             )
                               )
LAW OFFICES OF MELBOURNE       )
MILLS, JR., PLLC, et al.,      )   **MEMORANDUM OPINION AND ORDER**
                               )
        Defendants.            )
                               )
                               )

                    **       **       **       **       **

    This matter is before the Court on Plaintiff's motion for
summary judgment [RN 70].  Defendants[1] have responded [RN 74 and
82] and Plaintiff replied [RN 82].  This matter is now ripe for
review.

## I.   INTRODUCTION

    Plaintiff, Continental Casualty Company ("Continental"), seeks
a declaratory judgment as to its rights and obligations under the
Lawyers Professional Liability Policy No. LAW-184081127 issued by
Continental to The Law Offices of Melbourne Mills, Jr., PLLC (the
"Firm") for the August 21, 2003 to August 21, 2004 policy period
(the "Policy").  Specifically, Continental requests a declaration

---

    [1]  The plaintiffs in the underlying action of *Abbott, et al.
v. Chesley, et al.,* Case No. 05-CI-436 (Cir. Ct., Boone Cty. Ky.)
also have an interest in the outcome of this litigation and are
named as Defendants.  As Mills and the *Abbott* plaintiffs make the
same arguments in opposition to Continental's motion for summary
judgment, all references to Mills's arguments include the
arguments made by the *Abbott* plaintiffs.

that: (1) the Policy is void *ab initio* by virtue of material misrepresentations or omissions of fact by Mills and/or the Firm; (2) by virtue of said rescission, Continental has no obligation to defend or indemnify the Firm or any other insured, including Melbourne Mills, Jr. ("Mills") with respect to any claim, including *Abbott, et al. v. Chesley, et al.,* Case No. 05-CI-436 (Cir. Ct., Boone Cty. Ky.); and (3) that Continental is entitled to recover the amount of any defense costs it has advanced to Mills and/or the Firm in connection with the Underlying Action.  As an alternative to finding the Policy void *ab initio*, Continental requests the Court find that certain provisions of the Policy exclude coverage for the Underlying Action and enter summary judgment in Continental's favor.

There being no genuine issue of material facts, the Court finds that the Policy is void *ab initio* and Continental is entitled to summary judgment.

## II.  BACKGROUND[2]

Mills and several other attorneys, including Shirley A. Cunningham and William J. Gallion, collectively represented a group of over 400 plaintiffs seeking damages from American Home Products Corporation ("AHP") and others for injuries arising from their use

---

[2]  While the Court could fill a short novel with the facts and circumstances surrounding the Fen-Phen Action and the Underlying Action, only those facts which concern Mills's application for the Policy with Continental are relevant to the Court's inquiry in the instant matter.

of the diet drug Fen-Phen (the "Fen-Phen Action").  Mills's fees for the Fen-Phen Action were governed by contingency fee contracts with each of his clients which limited Mills's fees to 30% of his clients' gross recovery.  (Ex. C, Defs.' Answer to Continental's First Set of Reqs. for Admis., No. 10).[3]

In May 2001, following a successful mediation, AHP agreed to settle the Fen-Phen Action for approximately $200 million.  The Fen-Phen plaintiffs collectively received approximately $74 million, or 37%, of the $200 million settlement.  The remainder was distributed as follows:  Mills received $23 million; Cunningham received $26 million; Gallion received $30 million; Chesley received $20 million; other counsel and consultants received $7 million; and the remaining $20 million was used to establish The Kentucky Fund for Healthy Living, Inc. (the "Fund"), to which Mills was appointed as a director and paid a salary.

In early February 2002, Mills became aware that the Kentucky Bar Association ("KBA") was investigating bar complaints filed against him in connection with the Fen-Phen action.  (Mills Ans. Interrog., Ex. J, No. 4.)  Specifically, Mills admits that he was made aware of the bar complaint filed against him as early as February 4, 2002, or perhaps "a day or two before.  A week before maybe."  (Mills Depo., Ex. D at 97.)  Shortly thereafter, on

---

[3]  Unless otherwise specified, all references to Exhibits refer to Record Nos. 70 and 71, Continental's Motion for Summary Judgment.

February 11, 2002, William Johnson, counsel for Mills, attended a hearing of the KBA's Inquiry Commission with respect to an application for a *subpoena duces tecum* that was served on Mills in January or February of 2002 in relation to the Fen-Phen Action. (Mills Ans. to Pl.'s Second Req. for Admis., Ex. K, Nos. 65-66.)

On August 21, 2003, Mills filed an application for renewal of his professional liability insurance with Continental for the 2003-2004 period (the "2003 Application"). (Griffin Aff., Ex. B.) Question number 3 asked: "Are there any claims, or acts or omissions that may reasonably be expected to be the basis of a claim against the firm, that have not been reported to the Company or that were reported during the existing policy period?" Mills answered "NO," but also referred to Schedule 2. Schedule 2, entitled "E&O Claims," reads as follows: "In addition to Melbourne Mills, Jr., the lawyers currently serving in the firm include two of counsel partners, David L. Helmers and E. Patrick Moores. The information regarding the of counsel attorneys is contained on the attached attorney information sheet."[4] (*Id.* at 4.)

Question number 4 of the 2003 Application reads: "Has any attorney been disbarred, suspended, formally reprimanded or subject to any disciplinary inquiry, complaint or proceeding for any reason

---

[4] The Court must note that the text of Schedule 2 does not, in fact, appear at all responsive to question number 3 of the 2003 Application. The text of Schedule 2 is identical to that of Schedule 1, which is entitled "New Attorneys."

other than non-payment of dues during the expiring policy period?"
In response, Mills answered "NO," but referred to Schedule 3, which
reads as follows:

> During the current year no attorney has been disbarred,
> suspended, formally reprimanded or subject to any
> disciplinary inquiry, complaint or proceeding.  In prior
> years, attorneys in the Firm have responded to inquiries
> filed by all jurisdictions exercising jurisdiction and
> control over attorney conduct.   There have been no
> adverse findings regarding any attorney or other party's
> conduct.

(*Id.*)   In his deposition, Mills admitted that at the time he
submitted the 2003 Application, he had not been informed by the KBA
that it was no longer investigating him with regards to the Fen-
Phen Action.  (Mills Dep., Ex. D at 233:22-25.)  After reviewing
the 2003 Application, Continental issued the Policy.  (Griffin
Aff., Ex. C.)

In 2005, plaintiffs from the Fen-Phen Action asserted legal
malpractice claims against Mills and others in the case of *Abbott*,
*et al. v. Chesley, et al.,* Case No. 05-CI-436 (Cir. Ct., Boone Cty.
Ky.) ("*Abbott*" or the "Underlying Action").  The *Abbott* plaintiffs
complained that Mills and others

> failed to inform their clients about the material terms
> of the settlement, the extent to which other plaintiffs
> participated in the settlement, the amount of funds
> deducted from settlement proceeds for attorneys' fees and
> expenses, the amount of funds that were not distributed
> to Plaintiffs, the fact that they established a
> corporation with settlement funds and the amount of
> settlement funds transferred to that corporation.

(Ex. A, *Abbott* Am. Compl. at ¶ 2.)  The *Abbott* court ultimately

5

ruled that Mills and other "breached their fiduciary duties to the Plaintiffs when they paid themselves fees over and above the amount to which they were entitled to under their fee contracts with their clients," (RN 71, Ex. U at 1) and awarded the plaintiffs $42 million dollars in compensatory damages.  Continental provided Mills a defense in connection with the Underlying Action, however, it did so under a full reservation of rights, including the right to rescind the Policy.  Continental now seeks a declaration that the Policy does not provide coverage for the Underlying Action because either the Policy is void *ab initio* or Mills's conduct is specifically excluded from coverage under the terms of the Policy.

### III.  STANDARD OF REVIEW

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial burden to show the absence of a genuine issue of material fact.  *Celotex Corp*. *v*. *Catrett*, 477 U.S. 317, 323 (1986).  This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial.  *Id*. at 325.  A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law.  *Celotex*, 477

6

U.S. at 325.   A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).   The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment.   *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885.

## IV.  ANALYSIS

Under Kentucky law, an insurer may rescind an insurance policy based on a misrepresentation, omission, or incorrect statement contained in the application for insurance if it is either (1) fraudulent; (2) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or (3) the insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise. *See* KRS § 304.14-110.  An insured's misrepresentations need only satisfy one of the three categories to entitle the insurer to rescission.  *See Progressive Specialty Ins. Co. v. Rosing*, 891 F. Supp. 378 (W.D. Ky. 1995).

7

Mills's 2003 Application for insurance, which resulted in Continental issuing the Policy of insurance, contained misrepresentations or omissions which satisfy at least one of the three criteria found in KRS 304.14-110. When asked in question 4 of the 2003 Application if any attorney had been "disbarred, suspended, formally reprimanded or subject to **any disciplinary inquiry, complaint or proceeding** for any reason other than non-payment of dues during the expiring policy period," (emphasis added) Mills answered "NO." Mills's answer to question number 4 is clearly a misrepresentation or omission. Mills knew that a bar complaint had been filed against him in early 2002, and he admitted that as of the date he signed and certified the 2003 Application, the KBA's investigation was ongoing. Not only was Mills aware that an investigation was ongoing, his attorney attended a hearing held by the KBA Inquiry Commission, which resulted in Mills being served with a *subpoena duces tecum* requesting records related to the Fen-Phen Action.

While Mills argues that the filing of a complaint with the KBA is not sufficient to constitute a disciplinary proceeding or inquiry, another federal district court suggested, and this Court agrees, that "the initial filing of a citizen complaint begins the process and probably satisfies the plain and reasonable definition of being subject to 'disciplinary proceedings.'" *Continental Casualty Company v. Lampe & Hamblin, PLLC*, 2004 WL 570826, at *4,

Case No. 03cv604 (W.D. Ky. Nov. 1, 2004). As the *Lampe & Hamblin* Court observed, "[b]ecause Continental has a duty to defend even unmeritorious claims, it is interested in all potential claims." *Id.* The KBA hearing and investigation clearly constituted a disciplinary inquiry, complaint, or proceeding, as it relates to question 4 of the 2003 Application. The Rules of the Kentucky Supreme Court clearly state that the purpose of a *subpoena duces tecum* served by the Inquiry Commission is to direct the recipient "to produce to Bar Counsel any evidence deemed by the Inquiry Commission to be material to the investigation of a complaint." Ky. Sup. Ct. R. 3.180(3). There is no merit to the argument that Mills was not subject to a disciplinary inquiry, complaint, or proceeding when he submitted the 2003 Application.

The fact that there was an ongoing KBA inquiry into Mills's actions with respect to the Fen-Phen Action is precisely the type of information Continental needed to evaluate its potential for current and future risk. Peter Brinkman, underwriter for Continenital, testified that he could "state without hesitation or qualification that an affirmative answer to Question 3 and/or 4 of the 2003 Application would have been material to Continental's underwriting of the policies issued to the Firm." (Brinkman Aff., ¶ 15.) There can be no doubt that the bar complaint and investigation concern the very type of risk that Continental agreed to assume when it issued the Policy of insurance, and any

reasonable person must find these misrepresentations or omissions material.

Mills's argument that any misrepresentation or omission in regards to question 4 is cured by Schedule 3 to the 2003 Application is to no avail. Schedule 3 does not remedy the misrepresentation or omission, as it contains a misrepresentation or omission for the same reasons as the 2003 Application. While Schedule 3 states that, "[d]uring the current year no attorney has been . . . subject to any disciplinary inquiry, complaint, or proceeding," the fact remains that no matter what it is termed, the KBA's inquiry, proceeding, or investigation was ongoing at the time the 2003 Application was submitted.

In addition to being material to the acceptance of the risk, thus satisfying subsection (2) of KRS § 304.14-110, Mills's misrepresentations and omissions on the 2003 Application also satisfy subsection (3) of the statute. In his affidavit, Brinkman states that had Mills answered question 4 in the affirmative, Continental would have conducted an investigation into the ongoing investigation by the KBA. Armed with this information, Continental would have taken "one of several potential restrictive underwriting actions in order to address the potential exposure, including substantially increasing the premium for the renewal policy for the August 21, 2003 to August 21, 2004 policy period, decreasing the limit of liability offered for such policy, or both, among other

options." (*Id.* at ¶ 17.)

In an attempt to avoid the necessary conclusion that the Policy is void *ab initio*, Mills argues that even if Continental were entitled to void the Policy based upon the information he failed to disclose, he would have been entitled to purchase a three-year Extended Reporting Period ("ERP") on the 2002 policy. Such an argument is completely irrelevant to the question of whether or not the 2003 Application contained misrepresentations or omissions which allow Continental to rescind the Policy.

Continental also argues that Mills's response to question 3 of the 2003 Application entitled it to rescind the Policy and have it declared void *ab initio*. Because the Court finds the Mills's response to question 4 warrants rescission of the Policy, it is unnecessary to address this issue. Likewise, the Court declines to decide whether or not Continental is entitled to summary judgment based upon certain exclusionary language in the Policy.

### V. CONCLUSION

As the *Rosing* Court stated, "[t]here can be no doubt, however, that the legislature intended [KRS § 304.14-110] to encourage honesty and forthrightedness on the part of potential insureds and to dissuade misrepresentations by allowing insurance companies the remedy of voiding their policies." *Rosing*, 891 F. Supp at 381 (citing *State Farm Mut. Auto. Ins. Co. v. Crouch*, 706 S.W.2d 203 (Ky. Ct. App. 1986). Mills's misrepresentations and omissions

violate both the letter and the spirit of KRS § 304.14-110.  For the reasons discussed above, Continental is entitled to rescind the Policy.

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

1) That Continental's Motion for Summary Judgment [Record No. 70] shall be, and the same hereby is, **GRANTED**;

2) That the Lawyers Professional Liability Policy No. LAW-184081127 issued by Continental Casualty Company to The Law Offices of Melbourne Mills, Jr., PLLC (the "Firm") for the August 21, 2003 to August 21, 2004 policy period is **RESCINDED AND VOID *AB INITIO***;

3) That by virtue of said rescission, Continental has no obligation to defend or indemnify the Firm or any other insured, including Melbourne Mills, Jr., with respect to any claim, including *Abbott, et al. v. Chesley, et al.,* Case No. 05-CI-436 (Cir. Ct., Boone Cty. Ky.) (the "Underlying Action");

4) That Continental is entitled to recover the amount of any defense costs it has advanced to Mills and/or the Firm in connection with the Underlying Action;

5) That Continental shall have up to and including **April 16, 2010**, in which to file with the Court its brief on the issue of the amount of defense costs it is entitled to recover from Mills and/or the Firm.  Responses and replies shall be governed by the Local Rules;

6) That all pending motions shall be, and the same hereby are,

**DENIED AS MOOT**; and

    7) That all scheduled proceedings shall be, and the same hereby are, **CONTINUED GENERALLY**.

    This the 15th day of March, 2010.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge